**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| THE GWO LITIGATION TRUST, | ) | |
| | ) | |
|     Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPRINT SOLUTIONS, INC., | ) | |
| | ) | |
|     Defendant/Counterclaim Plaintiff. | ) | |
| | ) | C.A. No. N17C-06-356 PRW |
| _____ | ) | CCLD |
| | ) | |
| SPRINT EWIRELESS, INC., | ) | |
| | ) | |
|     Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE GWO LITIGATION TRUST, | ) | |
| | ) | |
|     Third-Party Defendant. | ) | |

Submitted:  July 19, 2018
Decided:  October 25, 2018

*Upon Defendant Sprint Solutions, Inc.'s Motion to Dismiss*
*Counts Three through Seven of the Amended Complaint,*
**DENIED** in part; **GRANTED** in part.

*Upon Plaintiff GWO Litigation Trust's Partial*
*Motion to Dismiss Defendant's Amended Counterclaims*
*and Sprint eWireless, Inc.'s Third-Party Claim,*
**DENIED** in part; **GRANTED** in part.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Richard M. Beck, Esquire, Sean M. Brennecke, Esquire, Klehr Harrison Harvey Branzburg LLP, Wilmington, Delaware, John D. Byars, Esquire (*pro hac vice*), Joseph C. Smith, Jr., Esquire (*pro hac vice*) (argued), Bartlit Beck Herman Palenchar & Scott LLP, Chicago, Illinois, Attorneys for Plaintiff.

Steven L. Caponi, Esquire, Matthew B. Goeller, Esquire, K&L Gates LLP, Wilmington, Delaware, David I. Swan, Esquire (*pro hac vice*) (argued), McGuireWoods LLP, Tysons, Virginia, Brian A. Kahn, Esquire (*pro hac vice*) (argued), McGuireWoods LLP, Charlotte, North Carolina, Attorneys for Defendant and Third-Party Plaintiff.

**WALLACE, J.**

## I.    INTRODUCTION

Sprint Solutions, Inc. ("Sprint") entered into a series of contracts with General Wireless Operations, Inc. ("General Wireless") in early 2015 for the purpose of revitalizing the bankrupt RadioShack Corporation ("RadioShack") through unified Sprint/RadioShack store locations, referred to in the agreements as the "Store-Within-A-Store" ("SWAS") model.

The General Wireless Organization Litigation Trust ("GWO Trust"), the successor-in-interest to General Wireless, now brings suit against Sprint on seven counts: two counts of breach of contract; and one count each of breach of the implied covenant of good faith and fair dealing, misappropriation of trade secrets, conversion, unfair competition, and tortious interference with prospective business relations.  Sprint moves to dismiss all but the breach-of-contract claims.

Sprint brings five counterclaims against GWO Trust: two counts of breach of contract; one for declaratory relief regarding limitation of liability; an attorney's fees request under the Delaware Uniform Trade Secret Act ("DUTSA") for a bad faith claim of trade secret misappropriation; and an indemnification claim.  Third-party plaintiff Sprint eWireless, Inc. ("eWireless") also claims breach of contract against GWO Trust.  GWO Trust moves to dismiss three of Sprint's counterclaims and eWireless's third-party claim.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are undisputed in this action.  While GWO Trust and Sprint each present its version of the story in its respective pleadings, the basic facts are as follows.

### A. RadioShack Bankruptcy and the Parties Involved.

RadioShack, founded around 1920, was once an iconic name with a nationwide retail footprint in electronics, computer, and cellphones.[1]  From 2011 to its bankruptcy filing in 2015 ("First RadioShack Bankruptcy Case"), RadioShack's revenue declined due to increasingly competitive market conditions.[2]

General Wireless, an entity formed by New York-based hedge fund Standard General LP, was created to acquire the strongest parts of RadioShack's business from bankruptcy and to revitalize the retailer.[3]  General Wireless, Inc. ("GWI") is the ultimate parent entity of General Wireless.[4]

---

[1]   Amended Complaint [hereinafter "Am. Compl."] ¶ 12; Amended Counterclaims and Third-Party Claim [hereinafter "Am. Countercls. & Third–Party Cl."] ¶ 1.

[2]   Am. Compl. ¶ 13.

[3]   *Id.* ¶¶ 7, 14.

[4]   Although not directly pleaded in GWO Trust's Amended Complaint, the parties' briefing has illustrated the interdependency and affiliation between General Wireless and GWI.  For example, Sprint asserted "that it meant to name GWI, the signatory and General Wireless's ultimate parent, instead."  Def.'s Sur-Reply to Pl.'s Reply in Supp. of its Partial Mot. to Dismiss Def.'s Am. Countercls. and eWireless's Third–Party Cl. [hereinafter "Def.'s Sur-Reply"] ¶ 2.

Sprint, controlled by the Japanese wireless and internet conglomerate SoftBank Corp. since June 2013, is incorporated in Delaware and sought to expand its business in the United States' wireless market which had been predominated by AT&T and Verizon.[5] eWireless, an affiliate of Sprint, is a Kansas corporation.

**B. Strategic Alliance Agreement; Investor Rights Agreement**

In 2015, Sprint was seeking to expand its footprint in the American market. And RadioShack, while owning many retail stores nationwide, was suffering from weakened finances and the on-going proceeding in the First RadioShack Bankruptcy Case.[6] So the parties negotiated various mutually beneficial agreements as part of the first bankruptcy case.

On April 1, 2015, General Wireless and Sprint entered into the Amended and Restated Master Strategic Retail Alliance Agreement (the "Alliance Agreement") under which the parties would establish co-branded retail stores—using the SWAS format—to sell RadioShack products and Sprint products exclusively.[7] A week later, the parties entered into the Operation, Management, and Staffing Agreement ("OMS Agreement"), as well as numerous other related agreements, including but not limited to master leases and subleases, a distribution agreement, a retailer

---

[5]     Am. Compl. ¶ 18.

[6]     *Id.* ¶¶ 22–23.

[7]     *Id.* ¶ 23; Am. Compl. Ex. 1 (Alliance Agreement) [hereinafter "Alliance Agreement"].

agreement, and an Investor Rights Agreement (the "Investor Rights Agreement" or "IRA," collectively, the "Related Agreements").[8] The OMS Agreement detailed matters not specified in the Alliance Agreement.[9]

Under the SWAS model, the parties were to use commercially reasonable efforts to meet an agreed-upon schedule in opening co-branded stores, setting up joint signage, staffing and training employees, and maintaining inventory.[10] Specifically, with respect to the cost of signage, Sprint would be responsible for 60% and General Wireless for 40%.[11]

The SWAS model didn't produce the expected market results.[12] Four months into the Alliance Agreement, only about one-quarter of the SWAS model locations were completed.[13] Progress stalled due to the parties' failure to provide funding, collaborate on signage, and maintain adequate inventory.[14]

---

[8]   Am. Countercls. & Third–Party Cl. ¶ 18.

[9]   Am. Compl. Ex. 2 [hereinafter "OMS Agreement"].

[10]   Alliance Agreement §§ 2.2, 7.2, and 9.1.

[11]   Am. Countercls. & Third–Party Cl. ¶ 24; Alliance Agreement § 9.1(a) ("Sprint and [General Wireless] will each bear their pro rata costs for all such Exploitation Materials assuming a 60%/40% split of signage space and Exploitation Material brand presence.").

[12]   Am. Compl. ¶ 25.

[13]   *Id.* ¶ 27.

[14]   *Id.* ¶¶ 25–27; Am. Countercl. & Third–Party Cl. ¶¶ 4, 24–28.

As mentioned, along with the Alliance Agreement, eWireless, GWI, and certain GWI affiliates entered into the Investor Rights Agreement.[15] The IRA was meant to protect eWireless as an investor and shareholder by granting eWireless the rights to receive stock warrants, observe the board, and have General Wireless maintain minimum levels of capital and liquidity.[16] In addition, eWireless would have a claim against GWI[17] in the amount of $60 million less the amount of commissions General Wireless earned from the ongoing sale of Sprint products (the "Sprint Investor Reimbursement"), referred to as the "Threshold" under Schedule 4.2 of the Alliance Agreement.[18] Schedule 4.2 set forth a fees and payment arrangement that required the parties to "negotiate in good faith to modify the application of the Threshold" if General Wireless experienced a negative cash flow.[19]

---

[15] Am. Countercls. & Third–Party Cl. ¶ 21.

[16] *Id.*

[17] *Id.* (the Court notices that eWireless alleged "General Wireless"–which is not the signatory party, but as discussed, the Court treats it as mere inadvertent error with the understanding that eWireless meant to refer to "GWI").

[18] *Id.*

[19] *See* Am. Compl. ¶ 30; Am. Countercls. & Third–Party Cl. ¶ 22; and Alliance Agreement § Schedule 4.2 (Commission Fees).

For the eight months before February 2016, General Wireless did suffer continuous monthly negative cash flow.[20] The parties negotiated and hired outside consultants between December 2015 and March 2016 in an attempt to address that cash flow problem.[21] And in April 2016, General Wireless and Sprint executed an amendment to the Alliance Agreement (the "Fourth Amendment").[22] Thereunder, Sprint was to increase its cash payment to General Wireless and provide additional support to SWAS locations.[23]

## C. Termination of the Alliance Agreement and the Second Bankruptcy Case.

The RadioShack/Sprint SWAS model didn't take off. And so, around February 2017, General Wireless and Sprint commenced negotiations to wind down the Alliance Agreement.[24] On March 5, 2017, General Wireless and Sprint executed a Mutual Settlement and Release, Operations Wind Down, and Bankruptcy Cooperation Agreement (the "Settlement Agreement").[25] Three days later, General

---

[20]    Am. Compl. ¶ 31.

[21]    Am. Countercls. & Third–Party Cl. ¶¶ 33–42.

[22]    *Id.* ¶ 44.

[23]    *Id.*

[24]    *Id.* ¶ 52.

[25]    *Id.* ¶ 53.

Wireless filed for bankruptcy (the "Second Bankruptcy Case").[26]  The Bankruptcy Court appointed a statutorily required committee of unsecured creditors (the "Committee") to act in the jointly-administered First RadioShack Bankruptcy Case and the Second Bankruptcy Case.[27]

Under the Settlement Agreement, Sprint was to: make a "wind-down payment" of $17 million to General Wireless, of which $12 million was to be paid before General Wireless commenced the Second Bankruptcy Case, and set aside a $5 million holdback ("Holdback") during an "investigation period" if General Wireless's creditors agreed to the mutual releases between Sprint and General Wireless.[28]  But if the creditors filed a claim against Sprint, Sprint forfeited the Holdback.[29]  The Settlement Agreement also contemplated a joint release of claims between General Wireless and Sprint.[30]  An estimated $18 million of the Sprint Investor Reimbursement owed to eWireless was excepted from the release of claims.[31]

---

[26]     Am. Compl. ¶ 44; Am. Countercls. & Third–Party Cl. ¶ 59.

[27]     Am. Countercls. & Third–Party Cl. ¶ 9.

[28]     *Id.* ¶¶ 55–58.

[29]     *Id.* ¶ 58.

[30]     *Id.* ¶ 56.

[31]     *Id.*

General Wireless sought approval of the Settlement Agreement from the Bankruptcy Court.[32] And on May 11, 2017, the Bankruptcy Court approved the Settlement Agreement (the "Settlement Approval Order").[33]

GWO Trust filed the original Complaint in this case in June 2017, asserting two counts of breach of contract and one count of misappropriation of trade secrets.[34] GWO Trust's Amended Complaint with additional claims was filed nine months later,[35] followed the next day by Sprint's Amended Counterclaims and Third-Party Claims.[36]

Now before the Court are the parties' cross-motions to dismiss. Sprint moves to dismiss Counts Three through Seven of GWO Trust's Amended Complaint. GWO Trust seeks to dismiss Counts I, II and VI of Sprint's Amended Counterclaims. GWO Trust also seeks dismissal of Count V—eWireless's third-party claim.

---

[32] *Id.* ¶ 59.

[33] *Id.* ¶ 60.

[34] *See* Compl.

[35] *See* Am. Compl.

[36] *See* Am. Countercls. & Third–Party Cl.

### III. STANDARD OF REVIEW

When considering a Civil Rule 12(b)(6) motion to dismiss for failure to adequately state a claim, the Court will:

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claims] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[37]

The Court must accept as true all well-pleaded allegations.[38] And every reasonable factual inference will be drawn in the non-moving party's favor.[39] But the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[40] Dismissal is warranted when a party either fails to plead facts supporting an element of its claim (or counterclaim), or where under no reasonable interpretation of the facts alleged could its complaint (or answer) be read to state a claim (or counterclaim) for which relief might be granted.[41] If the Court engages

---

[37] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

[38] *Id.*

[39] *Wilmington Sav. Fund Soc'y, FSB v. Anderson, et al.*, 2009 WL 597268, at *2 (Del. Super. Ct. Mar. 9, 2009) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).

[40] *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011).

[41] *Otto's Candies, LLC v. KPMG, LLP*, 2018 WL 1960344, at *3 (Del. Super. Ct. Apr. 25, 2018).

these well-accepted standards and finds the claimant (or counter-claimant) may recover, the Court must deny the motion to dismiss.[42]

## IV. DISCUSSION

### A. Sprint's Motion to Dismiss Counts Three through Seven of the Amended Complaint.

GWO Trust asserts: in Count Three—breach of the implied covenant of good faith and fair dealing; in Count Four—misappropriation of trade secrets; in Count Five—conversion; in Count Six—unfair competition; and, in Count Seven—tortious interference with prospective business relations. Sprint moves to dismiss them all on multiple grounds. Upon careful consideration of each argument raised, the Court **GRANTS**, in part, and **DENIES**, in part, Sprint's motion as to Count Three; **GRANTS** its motion as to Counts Five, Six, and Seven; and **DENIES** its motion as to Count Four.

#### 1. Counts Three, Five, Six, and Seven Are Not Time-Barred.

Sprint's first argument rests on its attempt to interpret the Settlement Approval Order. According to Sprint, the Settlement Approval Order preserves only those pre-bankruptcy claims against GWO Trust that are "timely" filed (each a "Timely Challenge"). A pre-bankruptcy claim, or "pre-petition" claim, is one that was or is deemed to have been filed prior to the bankruptcy petition. Sprint contends that

---

[42] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

because Counts Three, Five, Six, and Seven were not "timely" filed, they are time-barred.[43]

Under the Settlement Approval Order, a Timely Challenge is defined as "a claim [filed] against any Sprint … prior to July 1, 2017."[44] That definition has import to the release of liabilities under the Settlement Agreement, and accordingly, General Wireless's right to receive the $5 million Holdback.[45] In the event of a Timely Challenge, GWO Trust "shall be deemed to forfeit and [will] not receive any portion of the Holdback."[46]

The Settlement Approval Order expressly provides "[n]otwithstanding anything to the contrary in the Motion or the Settlement Agreement, *all Chapter 5 and state law claims* related to any Sprint Party's prepetition acts or omissions *are fully preserved*, if *any* such claims as to any Sprint Party are included in a *Timely Challenge* . . ."[47] Sprint reads this language to mean "… state law claims … are

---

[43]    Def. Sprint's Opening Br. in Supp. of its Mot. to Dismiss Counts Three Through Seven of the Am. Compl. [hereinafter "Def.'s Br."] ¶¶ 9–14.

[44]    Pl.'s Answering Br. in Opp'n to Def.'s Mot. to Dismiss [hereinafter "Pl.'s Opp'n"] Ex. B (hereinafter "Settlement Approval Order") § 7.

[45]    Settlement Approval Order § 7; Pl.'s Opp'n Ex. A (hereinafter "Settlement Agreement") § 8.1.

[46]    Settlement Approval Order § 11.

[47]    *Id.* § 8 (emphasis added).

preserved, [*only if*] such claims are included in a Timely Challenge."[48]  So, Sprint says, because Counts Three, Five, Six, and Seven were not asserted prior to July 1, 2017, as Timely Challenges, they are time-barred.[49]

GWO Trust counters that under the Settlement Approval Order so long as "*any*" claim is filed as a Timely Challenge, "*all*" prepetition and state law claims are preserved.[50]  Hence, Counts Three, Five, Six, and Seven could be added anytime because the original Complaint was filed prior to July 1, 2017, and preserved GWO Trust's right to bring any and all new claims.[51]

So the Court must determine whether only specific claims filed as Timely Challenges are preserved, or if the filing of a single Timely Challenge sufficed to preserve the right to add the new claims thereafter.  To resolve this contract construction question, the Court must "interpret clear and unambiguous terms according to their ordinary meaning."[52]

---

[48]  Def.'s Br. ¶ 9.

[49]  Def.'s Br. ¶¶ 9–14 (for example, Sprint repeatedly emphasizes "[Settlement Approval Order] require[s] all state law claims to be brought before July 1, 2017 and effectively releasing Sprint from any claims that were not part of a Timely Challenge[.]").

[50]  Pl.'s Opp'n ¶¶ 9–11.

[51]  *Id.* ¶¶ 10–11.

[52]  *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012).

Here, the Court finds no ambiguity in the terms of either the Settlement Agreement or the Settlement Approval Order. Section 8 of the Settlement Approval Order reads "*all* prepetition and state law claims are preserved, if *any* such claims are included in a Timely Challenge." This language clearly provides that if *any* claim is filed as a Timely Challenge, *all* claims are preserved and can be subsequently asserted.

The parties don't dispute that the initial Complaint, filed on June 28, 2017, is a Timely Challenge. And the Settlement Approval Order in plain language provides that the filing of the initial Complaint preserved General Wireless's right to assert additional prepetition and state law claims, as it has done in Counts Three, Five, Six, and Seven of the Amended Complaint. Accordingly, Sprint's time-bar argument fails.

### 2. Count Three—Breach of the Implied Covenant Claim Must Be Dismissed.

Sprint moves to dismiss Count Three–Breach of the Implied Covenant of Good Faith and Fair Dealing–contending that the conduct complained-of is covered by the express terms of the Alliance Agreement and the OMS Agreement. Thus, Sprint says, GWO Trust cannot assert an "implied" contract claim in lieu of or in addition to those based on express contract provisions.[53]

---

[53]     Def.'s Br. ¶¶ 14–15.

According to GWO Trust, the conduct alleged to have breached the implied covenant includes: (i) opening competing Sprint stores in close proximity, (ii) diverting customers away from co-branded stores to Sprint stores, and (iii) failing to adequately train its employees working in the co-branded stores.[54] GWO Trust complains that Sprint's breach caused reduced customer traffic, and decreased sales, revenue, and cash flow at the co-branded stores.[55]

Under Delaware law, the implied covenant of good faith and fair dealing attaches to every contract.[56] However, implying a covenant not contracted for by the parties is a "cautious enterprise" that "should be [a] rare and fact-intensive" exercise, governed solely by "issues of compelling fairness."[57]

The baseline in these matters—existing contract terms control.[58] The implied covenant cannot be used to re-write the agreement,[59] "to circumvent the parties'

---

[54]    Am. Compl. ¶ 76.

[55]    *Id.* ¶ 79.

[56]    *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441–42 (Del. 2005).

[57]    *Id.* at 442 (citing, *e.g.*, *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 443 (Del. 1996); *Cincinnati SMSA Ltd. Pshp. v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998) ("Delaware Supreme Court jurisprudence is developing along the general approach that implying obligations based on the covenant . . . is a cautious enterprise.")).

[58]    *Dunlap*, 878 A.2d at 441; *see also Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 888 (Del. Ch. Apr. 15, 2009) (holding that in any event, an implied covenant claim cannot be "invoked to override the express terms of [a] contract.").

[59]    *Nationwide Emerging Managers, LLC v. NorthPointe Hldgs., LLC*, 112 A.3d 878, 897 (Del. 2015).

bargain, or to create a free-floating duty unattached to the underlying legal document."[60] When a sophisticated party "could have easily drafted the contract to expressly" provide a specific contractual protection, the failure to do so cannot be remedied by employing the implied covenant.[61]

The Court will resort to the implied covenant only when a contract is truly silent with respect to the contested issue. And then only when the Court finds that the parties' expectations on the issue were so fundamental that they clearly would not need to negotiate about nor memorialize them.[62] Recognizing the "occasional necessity" of implying contract terms to ensure the parties' "reasonable expectations" are fulfilled,[63] the Court "must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal."[64]

A claimant may only invoke the protections of the covenant when it is clear from the underlying contract that the contracting parties would have agreed to

---

[60]   *Dunlap*, 878 A.2d at 441–42.

[61]   *Winshall v. Viacom Int'l Inc.*, 76 A.3d 808, 816 (Del. 2013); *Nationwide Emerging Managers, LLC*, 112 A.3d at 897.

[62]   *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032–33 (Del. Ch. 2006).

[63]   *Dunlap*, 878 A.2d at 442.

[64]   *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

- 15 -

proscribe the act later complained of.[65]  To maintain an implied covenant claim, the factual allegations underlying the implied covenant claim must differ from those underlying an accompanying breach-of-contract claim.[66]  If the contract at issue expressly addresses a particular matter, "an implied covenant claim respecting that matter is duplicative and not viable."[67]

Here, the Court finds Sprint's conduct purportedly giving rise to GWO Trust's implied covenant claim is, in part, governed by express contractual terms negotiated by the parties, and in part, not duplicative of the parties' express contractual obligations.

### i.  *Sprint's Opening of Nearby Competing Stores.*

GWO Trust's first complaint is that Sprint opened competing stores proximate to co-branded stores.[68]  Sprint posits that the Alliance Agreement and OMS Agreement—heavily negotiated contracts between sophisticated commercial parties—extensively and comprehensively detail the operations and locations of the co-branded SWAS stores.[69]  According to Sprint, there can be no undefined non-

---

[65]    *Winshall* v. Viacom Int'l, Inc., 55A.3d 629, 637, *aff'd*, 76 A.3d 808 (Del. 2013).

[66]    *Cent. Mortg. Co.*, 27 A.3d at 539.

[67]    *See Edinburgh Hldgs., Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *9 (Del. Ch. June 6, 2018) (dismissing the implied covenant claim as entirely duplicative of the contract claim).

[68]    Am. Compl. ¶ 76(a).

[69]    Def.'s Br. ¶¶ 16–17.

compete zone written in via the implied covenant.[70]  And so, Sprint says, because the conduct in this regard is governed by express contract terms, the implied covenant claim must be dismissed.

GWO Trust concedes that the Alliance Agreement did deal with SWAS locations, but argues that the allegation here arises from Sprint's implied duty *not* to open nearby competing stores; not from Sprint's express duty *to* open (or to cooperate in opening or re-tooling) stores at designated SWAS locations.[71]

The Court is mindful that the implied covenant cannot be used to inflict free-floating obligations on a party simply because the claimant fails to secure a protection through contract during the negotiations.[72]  Disfavor of the implied covenant shall not, however, preclude the claim when a contract is truly silent on a matter, and when the expectations of the parties thereon were so fundamental that one would expect the alleged offending behavior would need be neither negotiated over nor scrivened.[73]  Thus, to determine whether the implied covenant applies, the

---

[70]     *Id.* ¶ 16.

[71]     Pl.'s Opp'n ¶ 13.

[72]     *See generally Dunlap*, 878 A.2d at 441–42; *Nationwide Emerging Managers, LLC*, 112 A.3d at 896; *Winshall*, 55 A.3d at 637.

[73]     *Allied Capital Corp.*, 910 A.2d at 1032–33.

- 17 -

Court must employ a factual inquiry into the conduct complained-of and discern the parties' "reasonable expectation" given the factual backdrop of the case.

The Court finds that the Alliance Agreement and the OMS Agreement, taken as a whole, do indeed address the locations of the co-branded stores, and are silent as to any restrictions on Sprint opening competing stores. But when assessing the parties' expectations, the Court must consider the totality of the convoluted factual background of these agreements: General Wireless and Sprint entered into a strategic business relationship, executed a series of agreements to materialize the details, and implemented—albeit unsuccessfully—the SWAS model. Under the SWAS model, the co-branded stores would sell RadioShack and Sprint products exclusively. Implicit to this exclusivity was RadioShack/General Wireless's forbearance from selling Sprint competitors' products. Commercial profitability is achieved, in many instances, by increasing the competitiveness, and/or limiting the competition. Taking these commonsensical business considerations and the unique facts of this case, the Court finds General Wireless would reasonably expect Sprint to forbear from opening competing Sprint-stores carrying the exact same products in proximity to the co-branded stores.

The Court finds that, though indeed absent from the express terms of the Alliance Agreement and Related Agreements, the reasonable expectation here was sufficiently fundamental for the Court to infer such an obligation derived from the

parties' relationship, and such inference does not override or conflict with the contracts' express terms: Sprint's duty to open co-branded stores at the agreed-upon locations is sufficiently different from Sprint's implicit duty to refrain from opening nearby competing Sprint-alone stores. Under the specific facts alleged here, the implied covenant claim is not foreclosed as being duplicative of the express breach-of-contract claim.

## ii. *Diverting Customers.*

GWO Trust next claims Sprint, directly or indirectly, diverted customers away from co-branded stores.[74] Sprint argues that the complained-of conduct is covered by the Alliance Agreement's Section 7.2(b) and, therefore, warrants dismissal.[75]

Section 7.2 of the Alliance Agreement says that each party will "maintain a commercially reasonable" inventory level of their respective products, and ensure their products at the co-branded stores are substantially similar to their own branded stores.[76] And Section 4.3 of the OMS Agreement allows personnel in a co-branded store to set up appointments in other Sprint locations when need be.[77] In other

---

[74] Am. Compl. ¶ 76(b).

[75] Def.'s Br. ¶¶ 17–18.

[76] Alliance Agreement § 7.2(b).

[77] OMS Agreement § 4.3 ("… Sprint will assist RadioShack employees, or provide training, on accessing Sprint.com, the store locator and information on appointment setting for customers at other Sprint locations.").

words, some "diversion" of customers was anticipated. Accordingly, the Court finds the alleged wrongdoing—"diverting" customers away from co-branded stores—is the subject of the contracts' express terms. The Court declines to infer some other implied contractual obligation into the well-delineated, bargained-for exchange between the parties on this "diversion" claim.

### iii. *Training of Store Personnel.*

Last, GWO Trust argues that Sprint breached the implied covenant by failing to adequately train those working in the co-branded stores.[78] Again, Sprint says the issue of employee training is governed by specific contractual terms.[79]

Section 7.5 of the Alliance Agreement provides that " . . . each [party] will be responsible for staffing and managing such [p]arty's respective operations in each [co-branded store]."[80] And OMS Agreement Section 4.3 explicitly states that each party is responsible for training its respective employees regarding its own products and services.[81] To the extent Sprint assists or provides training to RadioShack/General Wireless employees, such assistance and training is limited to

---

[78]   Am. Compl. ¶ 76(c).

[79]   Def.'s Br. ¶ 18.

[80]   Alliance Agreement § 7.5.

[81]   OMS Agreement § 4.3.

"accessing Sprint.com, the store locator and information on appointment setting for customers at other Sprint locations."[82]

Again, express contract terms cover the complained-of conduct. Thus, GWO Trust's implied covenant claim on lack of employee training must be dismissed.

In sum, Sprint's motion to dismiss Count Three for Breach of the Implied Covenant of Good Faith and Fair Dealing is **GRANTED** with respect to the alleged diversion of customers and failure to adequately train employees; it is **DENIED** on the proximate-competing-stores allegation.

### 3. Count Four—Misappropriation of Trade Secrets.

GWO Trust alleges in Count Four that Sprint misappropriated its trade secrets, including store-level data, retail tickets, and gross margin for RadioShack products.[83] Sprint seeks dismissal of Count Four, on three grounds: (i) it is merely duplicative of Count Two;[84] (ii) it is not subject to DUTSA;[85] and (iii) it violates Delaware law's well-settled principle of honoring contracts.[86]

---

[82] *Id.*

[83] Am. Compl. ¶¶ 83, 88–89.

[84] Def.'s Br. ¶ 19.

[85] *Id.* ¶¶ 21–23.

[86] *Id.* ¶¶ 24–27.

Given that GWO Trust alleges the trade secrets misappropriation under the DUTSA, the Court first addresses its applicability. The Court then considers Sprint's remaining arguments.

### i. *DUTSA is Applicable—Count Four Will Not Be Dismissed as Duplicative.*

Sprint first asserts that the "trade secret" alleged in Count Four is no different than the "Confidential Information" referenced in Count Two, a breach-of-contract claim.[87] And, Sprint posits, a DUTSA claim for trade secret misappropriation must be dismissed when duplicative of a contractual claim for breach of confidentiality.[88]

DUTSA expressly provides that it displaces conflicting tort, restitutionary and other Delaware law that may provide civil remedy for misappropriation of a trade secret.[89] The statute does not, however, affect:

> (1) Contractual remedies, *whether or not* based upon misappropriation of a trade secret;
>
> (2) Other civil remedies *that are not* based upon misappropriation of a trade secret; or
>
> (3) Criminal remedies, whether or not based upon misappropriation of a trade secret.[90]

---

[87]  *Id.* ¶ 19.

[88]  *Id.* ¶¶ 19–20.

[89]  DEL. CODE ANN. TIT. 6, § 2007(a) (West 2018).

[90]  DEL. CODE ANN. TIT. 6, § 2007(b) (West 2018) (emphasis added).

The statute unequivocally provides that the existence of a contract claim does not preclude or otherwise affect a DUTSA claim, whether or not the contract claim arises from alleged misappropriation of a trade secret. Thus, that aspect of Sprint's argument is meritless.

With respect to other civil remedies, however, the statute does provide preemption to the extent those other remedies are based upon misappropriation of a trade secret. The determinant is whether "the same facts are used to establish all elements" of the common law claim and the DUTSA trade secret claim.[91]

GWO Trust, in asserting Count Four, seems to base its claim on both the common law[92] and DUTSA.[93] Inferring facts favorably to GWO Trust, as the Court must,[94] to the extent GWO Trust alleges misappropriation under both common law and DUTSA, the common law claim might be preempted by DUTSA; but any misappropriation-of-trade-secret claim is still preserved under DUTSA. Accordingly, GWO Trust's DUTSA trade secret claim is not foreclosed merely

---

[91] *Overdrive, Inc. v. Baker & Taylor, Inc.*, 2011 WL 2448209, at *4 (Del. Ch. Mar. 11, 2011) (citing *Accenture Global Servs. GMBH v. Guidewire Software Inc.*, 631 F. Supp. 2d 504, 508 (D. Del. 2009)).

[92] Am. Compl. ¶¶ 83, 86–87 ("Sprint misappropriated General Wireless's trade secret by breaching its confidentiality requirements … [and] by disclosing and using them without express or implied consent by General Wireless.").

[93] *Id.* ¶ 89 ("Sprint's action violated the applicable trade secrets act and the independent duties not to misappropriate trade secrets memorialized therein.").

[94] *Wilmington Sav. Fund Soc'y, FSB*, 2009 WL 597268, at *2.

because GWO Trust simultaneously asserts a contract-based breach-of-confidentiality claim.

But, while GWO Trust may legally assert a DUTSA-grounded trade secret claim, it still must do so under the applicable pleading standard. In Section IV.A.3.iii, *infra*, the Court addresses the sufficiency of GWO Trust's allegations.

### ii. *Sprint's Policy Argument is Groundless.*

Sprint additionally argues that Count Four should be dismissed because it violates the long-standing policy of honoring well-negotiated contracts between sophisticated commercial parties.[95]

Sprint's assertion, however, is predicated on its previous argument of DUTSA's inapplicability and is just as unpersuasive.

### iii. *GWO Trust Sufficiently Alleges a Trade Secret Misappropriation Claim.*

Having concluded that GWO Trust's trade secret misappropriation claim is not preempted, the Court now addresses whether GWO Trust sufficiently alleges that claim.[96]

---

[95]     Def.'s Br. ¶ 24–25.

[96]     Notably, Sprint does not argue insufficiency of the claim's factual allegations. But for its complaint to withstand a Rule 12(b)(6) dismissal motion, the claimant must plead sufficient factual support to plausibly state the contested claim upon which relief may be granted. Del. Super. Ct. Civ. R 12(b)(6).

To survive a motion to dismiss a DUTSA claim under Rule 12(b)(6), the complaint must plead four elements:

(i) A trade secret exists;

(ii) The plaintiff communicated the trade secret to the defendant;

(iii) The communication was made pursuant to an express or implied understanding that the defendant would maintain the secrecy of the information; and

(iv) The trade secret has been misappropriated within the meaning of that term as defined in the DUTSA.[97]

To make out a DUTSA trade secret misappropriation claim, the claimant must show the subject information qualifies as a "trade secret." DUTSA defines a trade secret as "information" that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use," and that "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[98] Information can be confidential and protected by a contractual provision, yet fail to be considered a "trade secret" under

---

[97]     *Alarm.com Hldgs., Inc. v. ABS Capital P'rs Inc.*, 2018 WL 3006118, at *7 (Del. Ch. June 15, 2018) (citing *Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, 2014 WL 897223, at *13 (Del. Ch. Mar. 5, 2014)).

[98]     DEL. CODE ANN. TIT. 6, § 2001(4) (West 2018); *see also Beard Research, Inc. v. Kates*, 8 A.3d 573, 589 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010).

DUTSA.[99]  The reverse is also true: a trade secret can be protected by DUTSA absent any express contract provision.[100]

On a motion to dismiss, the Court accepts as true all well-pleaded allegations,[101] and draws all factual inferences in favor of the non-moving party.[102] But the Court need not accept "conclusory allegations that lack specific supporting factual allegations."[103]

GWO Trust has pleaded sufficient facts to allege a claim for misappropriation of trade secrets.  The information relating to store-level data on traffic, retail tickets, and gross margins are conceivably of independent economic value for General Wireless, and/or its competitors in the industry, to be used for competition purposes such as determining pricing and marketing strategies, or for other business-related uses.  Such information is not readily available to one outside this SWAS partnership, or one who is not otherwise privileged to its access.

---

[99]  *EDIX Media Grp., Inc. v. Mahani*, 2006 WL 3742595, at *5 (Del. Ch. Dec. 12, 2006) ("Not all confidential information is a trade secret.").

[100]  The Court notices that, as GWO Trust correctly points out, allegations in Count Four do not squarely overlap with those under Count Two, and Count Two does not rely on the misappropriated information found to be a trade secret.  Pl.'s Opp'n ¶ 22, n.8.

[101]  *Cent. Mortg. Co.*, 27 A.3d at 535.

[102]  *Wilmington Sav. Fund. Soc'y, FSB*, 2009 WL 597268, at *2.

[103]  *Anderson*, 2011 WL 3654531, at *2.

GWO Trust, by entering into the Alliance Agreement, undertook sufficient reasonable measures to keep the information confidential. The "reasonable efforts" requirement for a trade secret claim is not a high bar. Bare legally conclusive assertions are inadequate;[104] confidentiality provisions or policies intended to prevent unauthorized disclosure are sufficient.[105]

In the Alliance Agreement, the Confidentiality provision sets forth, in detail: the definition of the subject information; the restriction and limitation on its disclosure and use; and the remedies available when a breach occurs. That satisfies DUTSA.

Lastly, GWO Trust must also plead facts demonstrating Sprint's "misappropriation." Under DUTSA, "misappropriation" is defined as "disclosure or use . . . without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know … that [his] use … derived from [a] person who owed a duty [to] maintain its secrecy or limit its use."[106] As

---

[104]     *MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *14 (Del. Ch. May 10, 2018) (holding that the allegations are insufficient where the plaintiff simple alleged "[plaintiff] made efforts to maintain the secrecy of the [i]nformation, and these efforts were reasonable under the circumstances.").

[105]     *Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, 2014 WL 897223, at *15 (Del. Ch. Mar. 5, 2014) (observing that "[i]n prior trade secrets cases …This Court [] has found that reasonable efforts were taken to preserve confidentiality when a company had implemented specific policies to prevent disclosure of information to outsiders or the company was in an industry where custom dictated that certain information be kept confidential.").

[106]     DEL. CODE ANN. TIT. 6, § 2001(2)(b)(2)(C) (West 2018).

confidentiality was consented to by the parties via the Alliance Agreement, Sprint knew or must have known the information was expected to be kept secret. GWO Trust has pleaded sufficient facts to allege a claim for misappropriation of trade secrets under DUTSA.

### 4. *Count Five—Conversion and Count Six—Unfair Competition.*

GWO Trust alleges in Count Five a claim for Conversion of proprietary confidential business information.[107] In Count Six, it brings a claim for Unfair Competition complaining that Sprint improperly used confidential business information, diverted customers away, and interfered with existing landlord relationships.[108]

Sprint moves for dismissal on two grounds. First, Sprint argues—again, on the ground of duplication—that Counts Five and Six are mere repackaging of Count Two and not based on a duty independent of the contract.[109] Second, Sprint avers that Counts Five and Six are preempted by DUTSA.[110] GWO Trust maintains that

---

[107]    Am. Compl. ¶¶ 93–99.

[108]    *Id.* ¶¶ 102–11.

[109]    Def.'s Br. ¶¶ 19–21.

[110]    *Id.* ¶¶ 27–29.

the duties underlying Counts Five and Six do not derive solely from the contract, and are, therefore, not duplicative of Count Two.[111]

### i. *Counts Five and Six Are Duplicative of Count Two.*

Both conversion and unfair competition are common law remedies. While a claim based entirely on the breach of contractual terms generally must be sued in contract, and not tort,[112] a tort claim can be sustained alongside a contract claim where the same conduct constitutes a breach of contract, and a violation of an independent duty imposed by law.[113] Thus, the crux of the question here is: whether GWO Trust's conversion and unfair competition claims are based entirely on a duty deriving from the contract, or is there a potential violation of a duty imposed by law separate and apart from the contractual obligations.

Conversion is defined as "any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it."[114] It is

---

[111] Pl.'s Opp'n ¶¶ 22–25.

[112] *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007).

[113] *Id.*

[114] *Id.* (citing *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933)).

an intentional tort, hence, a *general duty* to refrain from converting another's property is implied under tort law.[115]

In the present case, GWO Trust's conversion claim is based on Sprint's alleged exertion of dominion over the purported confidential business information discussed earlier—*i.e.*, the data relating to store traffic, retail tickets, and gross margin for RadioShack products.[116] Again, that information was labeled and treated as "Confidential Information" in the Alliance Agreement, which not only defines, but also limits the use and disclosure of the information to limited persons for limited purposes.[117] In other words, that information would not have been entitled to confidential treatment by the parties had it not been for the Alliance Agreement. Sprint's duty, if any, to treat and keep such information confidential and not to wrongfully exert dominion over or misuse it, derives entirely from the Alliance Agreement. Absent the Alliance Agreement, Sprint had no separate duty with respect to that information. With no duty independent of that from the contract, GWO Trust's Count Five must be dismissed.

---

[115]  *Id.* (emphasis added) (recognizing that a claim for conversion does not require "specific proof of an independent duty to refrain from conversion where breach of contract was also alleged.").

[116]  Am. Compl. ¶¶ 93–96.

[117]  Alliance Agreement §§ 11.2, 11.4.

The Court now turns to Count Six, a claim of unfair competition. Delaware law defines "unfair competition" with less clarity.[118] It has been said that the essential distinction between legitimate market participation and "unfair competition" is "unfair action" by a defendant that prevents "the plaintiff from legitimately earning revenue."[119] To state a claim for unfair competition, a plaintiff must allege "a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm."[120]

GWO Trust alleges that Sprint's unfair action was Sprint improperly using the aforementioned confidential business information, diverting customers away, and interfering with landlord relationships.[121]

Although General Wireless might conceivably claim to have reasonable expectations with respect to those business relationships, its unfair competition claim must fail for the same reason as Count Five. The duties purportedly giving

---

[118]  *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *19 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010) (citing *EDIX Media Group, Inc. v. Mahani*, 2006 WL 3742595, at *11 (Del. Ch. Dec. 12, 2006) ("Delaware courts have struggled to define the boundaries of a claim for unfair competition under the common law.")).

[119]  *Triton Const. Co.*, 2009 WL 1387115, at *19.

[120]  *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *5 (Del. Ch. Jan. 20, 2009) (citing *Rypac Packaging Mach. Inc. v. Poges*, 2000 WL 567895, at *8 (Del. Ch. May 1, 2000)).

[121]  Am. Compl. ¶¶ 102, 104, 106–07.

rise to the claim derive entirely from the Alliance Agreement. GWO Trust pleads that Sprint interfered by improperly using "[GWO Trust's] Confidential Business information"[122]—a duty wholly imposed by and wholly arising from the Alliance Agreement. Thus, failing to allege a duty independent of those contract duties dooms GWO Trust's unfair competition claim and Count Six must be dismissed.

## ii. *Preemption by DUTSA.*

With respect to Counts Five and Six, Sprint additionally argues for their dismissal based on preemption by DUTSA.[123] While this argument is moot given the Court's discussion above, the Court agrees that the conversion and unfair competition claims would also be dismissed because of DUTSA preemption.

DUTSA expressly provides that a trade secret claim "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret."[124] The exceptions are criminal remedies, contractual remedies, and "other civil remedies that are not based on misappropriation of a trade secret . . ."[125]

---

[122]    *Id.* ¶ 102.

[123]    Def.'s Br. ¶¶ 27–29.

[124]    DEL. CODE ANN. tit. 6, § 2007(a) (West 2018); *see also Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. Super. Ct. 2002).

[125]    DEL. CODE ANN. tit. 6, § 2007(b) (West 2018).

But the foundation of GWO Trust's conversion and unfair competition claims is that the information Sprint used comprised of trade secrets. The same as that grounding the DUTSA trade secret misappropriation claim. While the latter survived, the former must be dismissed.

### 5. Count Seven—Tortious Interference with Prospective Business Relations.

In Count Seven, GWO Trust alleges tortious interference with prospective business relations with retail customers and existing landlords.[126] Sprint argues that the claim should be dismissed because GWO Trust is a party to the contract complained-of,[127] and that GWO Trust's allegations are inadequate.[128]

Sprint's first argument fails. GWO Trust complains not of the Alliance Agreement (to which it and Sprint are indeed parties), but the prospective business relations not yet formalized that Sprint allegedly interfered with.[129] But are these allegations sufficiently pleaded?

A claim for tortious interference with prospective business relations requires a plaintiff to show: (i) the reasonable probability of a business opportunity;

---

[126]      Am. Comp. ¶ 113–18.

[127]      Def.'s Br. ¶ 29.

[128]      *Id.* ¶¶ 30–33.

[129]      Am. Comp. ¶ 113; Pl.'s Opp'n ¶ 30.

(ii) intentional interference with that opportunity by a defendant; (iii) proximate causation; and (iv) damages.[130]  These factors must be evaluated "in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner."[131]

To allege "a reasonable probability of a business opportunity," the plaintiff must "identif[y] a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant."[132]  The threshold for specificity does not require detailing the party by name,[133] but "mere perception" of the prospect of a business relation[134] or reliance on generalized allegations of harm will not suffice.[135]

Here, the Court finds, even after viewing all the facts and drawing all inferences favorable to GWO Trust, GWO Trust fails to plead facts sufficient to

---

[130]     *De Bonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981).

[131]     *Id.*

[132]     *Agilent Techs.*, 2009 WL 119865, at \*5 (citing *Lipson v. Anesthesia Servs. P.A.*, 790 A.2d 1261, 1285 (Del. Super. Ct. 2001)).

[133]     *Id.* at \*6–8 (finding two of the four instances of defendant's purported interferences sufficiently support claims for unfair competition and tortious interference when under these two instances, the potential customers substantively inquired about the products, indicating a high probability of entering into a business relation).

[134]     *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, 2015 WL 6772638, at \*7 (Del. Super. Ct. Nov. 2, 2015).

[135]     *Agilent Techs.*, 2009 WL 119865, at \*7 (citation omitted).

support a claim for tortious interference with prospective business relations. Rather than identifying specific prospective business relationships with a high degree of probability,[136] GWO Trust's complaint is nothing more than generalized allegations of harm based on ostensible interference with speculative business relations.[137] Sprint's motion to dismiss Count Seven is **GRANTED**.

**B. GWO Trust's Motion to Dismiss Sprint's Amended Counterclaims and Sprint eWireless's Third-Party Claim.**

Sprint brings five counterclaims against GWO Trust: (i) Count I—breach of Alliance Agreement for General Wireless's rejection of the Alliance Agreement and Related Agreement;[138] (ii) Count II—breach of the Alliance Agreement and Related Agreements for General Wireless's alleged failure to assume the signage cost pro rata, maintain adequate inventory, pay for basic utilities, and ensure minimum internet connectivity;[139] (iii) Count III—declaratory relief regarding limitation of liability;[140] (iv) Count IV—seeking GWO Trust's attorney fees for purportedly

---

[136]     *Id.* at 7-8.

[137]     *See, e.g.*, Am. Comp. ¶ 113 (Count Seven) ("General Wireless had a reasonable probability of business opportunities with retail customers and existing landlords."); Am. Compl. ¶ 107 (Count Six) ("Sprint interfered with this reasonable expectation when it used … Confidential Information to directly compete… for [retail] space [with landlord.]").

[138]     Am. Countercls. & Third–Party Cl. ¶¶ 63–69.

[139]     *Id.* ¶¶ 71–83.

[140]     *Id.* ¶¶ 85–99.

bringing the misappropriation claim in bad faith;[141] and (v) Count VI—seeking indemnification by GWO Trust under the Alliance Agreement and Related Agreements.[142]

eWireless brings, in Count V, a third-party claim against GWO Trust for breach of the Investor Rights Agreement.[143]

GWO Trust moves for partial dismissal of Count I, Count II (to the extent the claim is based on the breach of the implied covenant of good faith and fair dealing), Count IV, and Count V.

For the following reasons, GWO Trust's motion is **GRANTED** in part, with respect to Count II; **DENIED** without prejudice, on Count VI; and **DENIED** on Count I, and Count V.

> *1. Counterclaim Count I—Breach of Contract by Rejection of the Alliance Agreement.*

Sprint asserts in Counterclaim Count I that GWO Trust breached the Alliance Agreement and Related Agreements by rejecting the Alliance Agreement and Related Agreements.[144] GWO Trust's motion to dismiss is two-fold: first, it argues

---

[141]     *Id.* ¶¶ 101–11.

[142]     *Id.* ¶¶ 131–37.

[143]     *Id.* ¶¶ 113–29.

[144]     *Id.* ¶ 65.

that Sprint misapprehends the Bankruptcy Code because the Bankruptcy Code cannot be the basis for a breach-of-contract claim—only state law can be used to define a claim's substance;[145] second (expanding on the first argument), GWO Trust says that under applicable Delaware law, Sprint fails to meet the pleading standard to put GWO Trust on notice as to the claims asserted and damages sought.[146] Sprint maintains that Count I survives as a matter of law.[147]

### i. *Bankruptcy Code.*

Section 365 of the Bankruptcy Code relates to executory contracts and unexpired leases. It allows a trustee, subject to the approval of the Bankruptcy Court, to assume or reject any executory contract.[148] More specifically, Subsection 365(g) provides that "the rejection of an executory contract" constitutes "a breach of such contract."[149] Although § 365 does not define "executory contract," according to its

---

[145] Pl.'s Opening Br. in Support of its Partial Mot. to Dismiss Def.'s Am. Countercls. & and Sprint eWireless. Inc.'s Third-Party Cl. [hereinafter "Pl.'s Br."] ¶ 4.

[146] Pl.'s Br. ¶¶ 4–5; *see also* Mots. O.A. Tr. (argued May 24, 2018; filed July 19, 2018) 38 ("…failure to identify an obligation that was breached as opposed to a contract."); *id.* ("So we're really left without being on notice of this breach of…"); *id.* at 40 ("… not on notice of …[w]hat kind of damages could they be talking about?").

[147] Def.'s Br. in Opp'n to Pl.'s Br. [hereinafter "Def.'s Opp'n"] ¶¶ 3–9.

[148] 11 U.S.C. § 365(a) (2018).

[149] 11 U.S.C. § 365(g) (2018).

legislative history, the term "generally includes contracts on which performance remains due to some extent on both sides."[150]

To treat claims arising from such rejected contracts as pre-petition claims, as opposed to post-petition claims, the Bankruptcy Code in Section 502(g) creates the fictional date upon which the breach is deemed to have occurred:

> (1) [a] claim arising from the rejection, under section 365 … of an executory contract … that has *not been assumed* shall be determined, and shall be allowed … as if such claim had a*risen before the date of the filing of the petition*; (2) [a] claim for damages calculated in accordance with section 562 shall be allowed … or disallowed … as if such claim had arisen before the date of the filing of the petition.[151]

Courts have held that, reading Sections 365 and 502 together, "rejection of an executory contract constitutes a breach" that is deemed to have occurred "on the date immediately before the date of filing for bankruptcy and creates a pre-petition claim for breach of contract."[152] However, the "bankruptcy breach" does not extinguish

---

[150]    3 Collier on Bankruptcy ¶ 365.02 (16th 2018) (citing legislative history that adopts Professor Countryman's definition of "executory contract," expressed as "[a] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.").

[151]    11 U.S.C. § 502(g) (2018) (emphasis added).

[152]    *Cinicola v. Scharffenberger*, 248 F.3d 110, 119 n.8 (3d Cir. 2001); *see also In re HQ Glob. Hldgs., Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (rejection of an executory contract is "equivalent to a non-bankruptcy breach") (citation omitted); *Stewart Title Guar. Co. v. Old Republic Nat. Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing 11 U.S.C. §§ 365(g)(1), 502(g)).

the parties' substantive rights and claims relating to, or arising from, the rejected contract.[153]

There is no dispute that the Alliance Agreement is an executory contract within the meaning of § 365(g), and that General Wireless rejected the Alliance Agreement pursuant to the Settlement Approval Order.[154] Under § 365(g) of the Bankruptcy Code, that rejection constitutes a breach of the rejected contract, and hence, gives rise to Sprint's claim of General Wireless's breach of the Alliance Agreement under Bankruptcy Code § 502(g).

On this ground, the Court finds GWO Trust's motion to dismiss Counterclaim Count I must be **DENIED**.

### ii. *Specificity of Sprint's Claim.*

GWO Trust's argument that Sprint fails to plead its breach-of-contract claim under state law is premised on Sprint's failure when alleging its "bankruptcy breach." Having concluded that Sprint's Counterclaim Count I withstands dismissal on the "bankruptcy breach" ground, the Court addresses the sufficiency of Sprint's pleading.

---

[153] *See, e.g.*, *Cinicola*, 248 F.3d at 119 n.8; *In re Fleming Cos., Inc.*, 2007 WL 788921, at *3 (D. Del. Mar. 16, 2007) ("[R]ejection of an executory contract does not alter the substantive rights of the parties.") (quotation omitted).

[154] Am. Countercls. & Third–Party Cl. ¶¶ 60, 65–66.

To plead a claim for breach of contract, Sprint must allege sufficient facts supporting (1) the existence of the contract, (2) the breach of an obligation imposed by the contract, and (3) the resultant damage.[155] "Delaware is a notice pleading jurisdiction and the complaint need[s] only give general notice as to the nature of the claim asserted against the defendant in order to avoid dismissal for failure to state a claim."[156] "In alleging a breach of contract, a plaintiff need not plead specific facts to state an actionable claim."[157]

GWO Trust complains that Sprint does not describe "specific" obligations breached by General Wireless, and therefore, fails to put GWO Trust on adequate notice.[158] The Court cannot agree. Sprint meets the "notice pleading" standard. The string of arrangements and events Sprint describes—including, the Alliance Agreement and Related Agreement, the negotiation and entering of the Settlement Agreement, the Bankruptcy Court's Settlement Approval Order, and GWO Trust's

---

[155]    *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[156]    *Nye v. Univ. of Delaware*, 2003 WL 22176412, at \*3 (Del. Super. Ct. Sept. 17, 2003); Superior Court Rule 8(a)(1).

[157]    *VLIW Tech.*, 840 A.2d at 611.

[158]    Pl.'s Br. ¶ 5 ("Sprint does not identify the breach of any specific obligation imposed by the Alliance Agreement or any of the Related Agreements …"); ("Sprint's allegations thus fail to give Plaintiff fair notice of a claim.").

rejection of the Alliance Agreement—can hardly be said to fail to put GWO Trust on notice of Sprint's breach-of-contract claim.

GWO Trust's motion to dismiss Counterclaim Count I is **DENIED**.

### 2. Counterclaim Count II—Breach of the Implied Covenant of Good Faith and Fair Dealing.

In Count II of the Counterclaims, Sprint asserts against GWO Trust breach of several express terms of the Alliance Agreement and Related Agreements, as well as, a breach of the implied covenant of good faith and fair dealing.[159] GWO Trust moves for dismissal, to the extent the claim is based on breach of the implied covenant. GWO Trust argues that the implied covenant claim is duplicative of the underlying contract claims and arises from the obligations expressly contracted for.[160]

The conduct that allegedly breached the implied covenant is General Wireless's failure to: (i) maintain adequate funding and the capitalization required by the Investor Rights Agreement; (ii) adequately staff the SWAS stores; and (iii) provide information to Sprint regarding negotiations of leases in 2016. Sprint

---

[159]    Am. Countercls. & Third–Party Cl. ¶¶ 77–78.

[160]    Pl.'s Br. ¶¶ 7–8.

alleges General Wireless acted "in an arbitrary or unreasonable" manner that adversely affected Sprint's ability to "receive the benefits of the bargain."[161]

As the Court discussed in Section IV.A.2, *supra*, resort to the implied covenant of good faith and fair dealing is a cautious enterprise used to "handle developments or contractual gaps,"[162] but not to re-write or override express terms of a contract.[163] Only when a contract is truly silent with respect to the contested matter will the Court allow an implied covenant claim, and that is only when the expectations of the parties are found to be sufficiently fundamental.[164] Where the questioned contract expressly addresses a particular matter, "an implied covenant claim respecting that matter is duplicative and not viable."[165]

The Court, on this present motion to dismiss, even upon taking all Sprint's factual allegations as true and drawing all inferences in its favor, finds its implied covenant claim must fail. The conduct allegedly violating the implied covenant is squarely addressed by the contract.

---

[161]    Am. Countercls. & Third–Party Cl. ¶¶ 77–78.

[162]    *Nemec*, 991 A.2d at 1125.

[163]    *See, e.g.*, *Nationwide Emerging Managers, LLC*, 112 A.3d at 897; *Kuroda*, 971 A.2d at 888.

[164]    *Allied Capital Corp.*, 910 A.2d at 1033.

[165]    *Edinburgh Hldgs., Inc.*, 2018 WL 2727542, at *9.

The funding requirements are provided in Sections 10(b) and 20 of the Investor Rights Agreement.[166] The obligation to adequately staff the SWAS stores is contracted for in Section 7.5 of the Alliance Agreement,[167] and in more detail in the OMS Agreement.[168] The alleged failure to share information relating to the negotiation of leases is well within the defined terms of Section IV (Rent and Overhead Payments; Fees; Payment) and Section VI (Reporting; Audits) of the Alliance Agreement. By way of example, under Section 6.1, each party shall provide monthly "an accounting of all percentage rent payments…"; Section 6.3 provides each party with general inspection rights, *i.e.*, rights to visit and inspect each co-branded store during regular business hours.[169]

Where the now-contested matters are based on express contractual rights or obligations, an implied covenant claim premised on the same subject matter must fail. Thus, the Court **GRANTS** GWO Trust's motion to dismiss Counterclaim Count II—the alleged breach of the implied covenant of good faith and fair dealing.

---

[166] Pl.'s Br. Ex. 1 (Investor Rights Agreement) [hereinafter "Investor Rights Agreement"] § 10.2 ([General Wireless]' Capital Investment), §20 (Representations Regarding Initial Capitalization of [General Wireless] and Corporate Structure).

[167] Alliance Agreement § 7.5 (Staffing and Management; Operation of Co-Branded Stores).

[168] OMS Agreement § 4.

[169] Alliance Agreement § 6.3.

### 3. *Counterclaim Count VI—Sprint's Right to Indemnification by GWO Trust.*

Sprint's next counterclaim, in Count IV, is that the Alliance Agreement, together with certain Related Agreements, provides Sprint with broad indemnification rights that entitle Sprint to be reimbursed by GWO Trust for Damages (as defined in Section 13.1(a) of the Alliance Agreement).[170] GWO Trust argues that none of the specific provisions asserted by Sprint provides Sprint with a right of indemnification related to the present action.[171] GWO Trust's main argument rests on Sprint's alleged failure to plead facts triggering the indemnification rights under either the Alliance Agreement or Retailer Agreement.[172] Part of GWO Trust's contention is that the only triggering event identified by Sprint is the breach of contract, pleaded in Count I, thus, the entire claim for indemnification is dependent on the outcome of Count I, rather than well-pleaded allegations of facts.[173]

---

[170] Am. Countercls. & Third–Party Cl. ¶¶ 132–37 (alleging, specifically, that "sections 12(e), 13(d), 15(a)(4)(b) and 17 of the Retailer Agreement and section 13.1(b) of the Alliance Agreement" provide Sprint with broad indemnification rights that obligate GWO Trust to reimburse Sprint for Damages, including attorney fees).

[171] Pl.'s Br. ¶ 12.

[172] *Id.* ¶¶ 13–17.

[173] Mots. O.A. Tr. 42–43 ("The filing of the complaint they said triggers the indemnification."); *id.* at 43 ("So I think not only their ultimate justification of these claims not pleaded …").

In response to GWO Trust's motion to dismiss, Sprint concedes that it does not allege facts supporting indemnification claims under Sections 12(e), 13(d), and 15(a)(4)(b) of the Retailer Agreement, and withdraws those claims accordingly.[174] Sprint further agrees to "amend Court VI to clarify [that] the basis for its indemnification is General Wireless's breaches of the Alliance Agreement and Retailer Agreement and strike the reference to Sections 12(e), 13(d) and 15(a)(4)(b) of the Retailer Agreement."[175] GWO Trust complains that Sprint purports to amend its pleading through briefing.[176]

As an initial matter, the Court must decide whether Sprint is permitted, in its concession in the answering brief, to strike indemnification claims based on 12(e), 13(d) and 15(a)(4)(b) of the Retailer Agreement; if so, whether the concession constitutes an amendment to its counterclaims. With respect to the rules governing amendment to pleadings, unlike the applicable rule in the Court of Chancery,[177]

---

[174]   Def.'s Opp'n ¶ 18, n.11.

[175]   *Id.*

[176]   Pl.'s Reply in Supp. of its Partial Mot. to Dismiss Def.'s Am. Countercls. & eWireless's Third-Party Cl. (hereinafter "Pl.'s Reply") ¶ 16.

[177]   *See* Ch. Ct. R. 15(aaa) (providing, in its relevant parts, "[n]otwithstanding subsection (a) of this Rule, a party that wishes to respond to a motion to dismiss under Rule 12(b)(6) or 23.1 by amending its pleading must file an amended complaint … no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed."). See also, *e.g.*, *Stern v. LF Capital P'rs*, 820 A.2d 1143, 1146 (Del. Ch. 2003) and *In re EZCORP Consulting Agreement Deriv. Litig.*, 130 A.3d 934, 941 (Del. Ch. 2016) for a discussion and application of Ch. Ct. R. 15(aaa). GWO Trust urges the Court to disallow Sprint's purported amendment to the pleadings "through its briefing," citing to *In re MeadWestvaco Stockholders Litig.*, 168 A.3d 675,

Superior Court Civil Rule 15 usually allows non-prejudicial amendment to pleadings, even after a responsive pleading has been filed.[178]

Sprint concedes the lack of merit and factual support for its indemnification claims based on Sections 12(e), 13(d) and 15(a)(4)(b) of the Retailer Agreement, and informs the Court of its intention to subsequently amend its counterclaims. Pursuant to Superior Court Civil Rule 15, permission for Sprint to do so is fully within the discretion of the Court, and usually will be freely given if GWO Trust is not prejudiced. So, dismissal of Count VI at this point would be premature. GWO Trust's motion to dismiss on the indemnification counterclaim is not yet ripe. The Court will address the whole of any such indemnification counterclaim once the amendment (or attempted amendment) is properly before it.

### 4. eWireless's Third-Party Claim for Breach of the Investor Rights Agreement (Count V).

eWireless, a third-party plaintiff, asserts GWO Trust breached the Investor Rights Agreement on multiple grounds, including: (i) failure to reimburse eWireless for an unpaid obligation in the amount of $16,922,526.25 pursuant to Section 10(c);[179] (ii) rejection of the Investor Rights Agreement in the Second Bankruptcy

---

n.68 ("arguments in briefs do not serve to amend the pleadings") (citation omitted). *See* Pl.'s Reply ¶ 16.

[178] *Chrysler Corp. v. New Castle Cty.*, 464 A.2d 75, 84 (Del. Super. Ct. 1983) (citation omitted) ("Leave to amend after a responsive pleading has been filed is discretionary[.]").

[179] Am. Countercls. & Third–Party Cl. ¶ 119.

Case as a prepetition breach;[180] and (iii) failure to invest in the co-branded stores for renovation and improvement as required under Section 10(b).[181] eWireless also alleges that in respect to the unpaid obligation of $16,922,526.25, it filed proofs of claim in the Second Bankruptcy Case.[182]

GWO Trust claims that Sprint and eWireless have named the wrong defendant in Count V because "General Wireless"—the named counterparty in Count V—is an abbreviation for *General Wireless Operations Inc.*, while in fact it is GWI (namely, *General Wireless Inc.*) that is the party to the Investor Rights Agreement.[183] GWO Trust further asserts that the proofs of claim filed by eWireless are against *General Wireless Operations Inc.*, not *General Wireless Inc.*—the real signatory to the Investor Rights Agreement.[184]

Sprint, in its opposition, first notes that the proofs of claim have been filed against both General Wireless and GWI.[185] Sprint further points out that this Court had authorized the parties' stipulation regarding the counterclaims and third-party

---

[180]     *Id.* ¶ 121.

[181]     *Id.* ¶¶ 123–24.

[182]     *Id.* ¶ 120.

[183]     Pl.'s Br. ¶¶ 17–18.

[184]     *Id.* ¶ 18.

[185]     Def.'s Opp'n ¶ 16.

- 47 -

claims whereby the captions and references in Count V were amended to GWI (the "Stipulation").[186] According to Sprint, mere typographical error or misnomer cannot be grounds for depriving a claimant of the right to remedies.[187]

In its reply, GWO Trust repeats its arguments that Sprint and eWireless named the wrong party, and argues that the Stipulation changed only the caption and does not excuse the error contained in the Amended Counterclaims and Third-Party Claim filed post-Stipulation.[188]

For the first time, in its reply, GWO Trust raises party and claim joinder,[189] as well as a set-off argument (claiming that eWireless's third-party claim is an attempt to set-off possible recoveries GWO Trust is expected to receive which, it says, is impermissible absent mutuality).[190]

Both parties subsequently filed respective sur replies to supplement their arguments on the additional issues newly raised by GWO Trust relating to the set-off argument, and the joinder of parties under Superior Court Civil Rule 19.

---

[186]   *Id.* ¶¶ 16–17; D.I. 28 (Stipulation Regarding Countercls. & Third-Party Claims [hereinafter "Stipulation re Countercls."]) ¶ 4.

[187]   Def.'s Opp'n ¶ 17.

[188]   Pl.'s Reply ¶¶ 20–21.

[189]   *Id.* ¶ 22 (raising arguments based on Superior Court rules of, by way of example, 14, 18 and 19).

[190]   *Id.* ¶¶ 22–23.

The Investor Rights Agreement was entered on April 1, 2015, among eWireless, GWI, and GWI's affiliates.[191] eWireless acknowledges that General Wireless is not a signatory party to the IRA, and that its references in Count V of the Amended Counterclaim and Third-Party Claim are intended to describe GWI.[192] eWireless says that despite the typographic error, GWO Trust is clearly on notice that eWireless's claim is brought against GWI.[193]

The Court agrees. "Delaware is a notice pleading state" where the complaint "needs only give general notice as to the nature of the claim" against the defendant.[194] Where a party seeks to amend its pleading by leave of court, such leave "shall be freely given when justice so requires."[195]

Here, the Court finds GWO Trust is clearly on notice of eWireless's third-party claim asserted in Count V. To start, the Stipulation was prompted by General

---

[191]    Investor Rights Agreement.

[192]    Pl.'s Reply ¶ 17; Def.'s Sur-Reply ¶ 2.

[193]    Pl.'s Reply ¶¶ 16–17; Pl.'s Reply ¶ 17, n.10; Def.'s Sur-Reply ¶ 2.

[194]    *E.g.*, *VLIW Tech.*, 840 A.2d at 611 ("[A] complaint for breach of contract is sufficient if it contains 'a short and plain statement of the claim showing that the pleader is entitled to relief.'") (citation omitted); Del. Super. Ct. Civ. R. 8(a)(1) ("A pleading … shall contain (1) a short and plain statement of the claim…").

[195]    Del. Super. Ct. Civ. R. 15(a).

Wireless commencing the Second Bankruptcy Case. It expressly provides for changing the reference of General Wireless to GWI. Moreover, soon after the Second Bankruptcy Case was filed, the parties amended their respective Claims and Counterclaims to reflect the changes in the caption of the present action. GWO Trust, as the successor-in-interest of both General Wireless and GWI, clearly understands the transactional history between and among the parties involved here, and cannot possibly deny notice of the claim asserted against GWI.

As diligent as litigants (and the Court) might be, errors overlooked by human eyes—while seemingly apparent—are all too common. Inflicting robotic precision on human work product at all times, and exerting disproportionate punishment for any negligible mistake invites injustice. Courts routinely, on motion or *sua sponte*, correct or permit corrections of various types of amendable errors.[196] The Court hereby declines to dismiss Count V merely for inadvertent typographical error.

---

[196] *See, e.g.*, *Williams v. Delcollo Elec., Inc.*, 576 A.2d 683, 686 (Del. Super. Ct. 1989) (vacating a default judgment based partially on the excusable error of "inadvertent typographical error in the address that the materials never arrived at their intended destination."); *Stevenson v. Del. Dep't of Nat. Ress. & Envtl. Control*, 2016 WL 6768903, at *8 (Del. Super. Ct. Nov. 7, 2016) (allowing plaintiff to correct the counterparty's middle name from "W." to "A." for apparent typographical error); *Stoppel v. State Dep't of Health & Soc. Servs.*, 2011 WL 3558120, at *10–11 (Del. Super. Ct. Aug. 9, 2011) (recognizing that the employer, albeit omitted from the caption of the complaint due to typographical error, is on notice of the otherwise sufficiently pleaded complaint filed by the employee intended against both the employer and individual defendants).

## ii. *eWireless is an Indispensable Party and Has Properly Asserted a Third-Party Claim.*

A party whose joinder will not deprive the Court of jurisdiction shall be joined if: (1) complete relief among existing parties cannot be accorded in its absence; (2) the party's interest would be impaired or impeded if not properly joined; or (3) exclusion would expose any of the existing parties to substantial risk of incurring multiple or inconsistent obligations.[197]

Here, the Court finds each of the above grounds supports eWireless's joinder in this action. First, the facts giving rise to the suit and the parties involved are closely intertwined. GWO Trust's claims, Sprint's counterclaims, and eWireless's third-party claim all rise from the set of agreements entered to materialize the business relations between Sprint and RadioShack/General Wireless, including but not limited to, the Alliance Agreement, the OMS Agreement, the Retailer Agreement, and the Investor Rights Agreement. The cross-references between and among those agreements further demonstrate their intrinsic interdependency. Moreover, the parties concerned are not unrelated. eWireless is an affiliate of Sprint, and GWI is an affiliate of General Wireless. GWO Trust—the named plaintiff—is the successor-in-interest of both General Wireless and GWI. Thus, absent eWireless, complete relief cannot be accorded among the existing parties.

---

[197] Del. Super. Ct. Civ. R. 19(a).

Second, eWireless's interest will likely be impaired if it were not allowed to join the suit. Pursuant to the Investor Rights Agreement, eWireless could be entitled to reimbursement in the amount of $60 million less any commission fees earned by General Wireless.[198] The purportedly reimbursable amount is valued at approximately $18 million.[199] In light of the ongoing bankruptcy proceeding, the distribution of assets, and claims by other creditors, denying eWireless to assert its claim in the present suit will potentially impair eWireless's ability to collect the $18 million that may be owed to it.

Lastly, the practical considerations of streamlining litigation and avoiding undue or inconsistent obligations weighs heavily in favor of eWireless's participation in the action. If eWireless is not allowed to join the present action, it may subsequently file a separate action (with the correct reference to GWI) against GWO Trust as the successor-in-interest, with the same allegations it has asserted here and seeking the same damages. The Court would find itself adjudicating the same set of facts and applying the same governing laws with no guarantee of consistent outcomes. The Court finds, therefore, that eWireless is an indispensable party for the purposes of joinder and that eWireless has properly asserted a claim

---

[198] Investor Rights Agreement § 10(c).

[199] Settlement Agreement § 8.2.

against GWO Trust. GWO Trust's motion to dismiss Counterclaim Count V is **DENIED**.

## V. CONCLUSION

For the reasons discussed above, Sprint's Motion to Dismiss GWO Trust's Amended Complaint is: **GRANTED**, in part, and **DENIED**, in part, on Count Three—Breach of the Implied Covenant; **GRANTED** on Count Five—Conversion, Count Six—Unfair Competition, and Count Seven—Tortious Interference with Prospective Business Relations; and **DENIED** on Count Four—Misappropriation of Trade Secret.

GWO Trust's Partial Motion to Dismiss Sprint's Amended Counterclaims and eWireless's Third-Party Claim is **GRANTED,** in part, with respect to Count II—Breach of the Implied Covenant; **DENIED**, without prejudice, on Count VI—Indemnification; and **DENIED** on Count I—Breach of Contract by Rejection, and Count V—eWireless's Third-Party claim.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*
**Paul R. Wallace, Judge**